**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 6, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

GARARD LARUE GARRETT, a/k/a
Garard Lure Garrett, a/k/a Garard Laure
Garrett,

    Defendant - Appellant.

No. 23-6183
(D.C. No. 5:22-CR-00489-F-1)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **PHILLIPS**, **BRISCOE**, and **CARSON**, Circuit Judges.
_____

Defendant Garard Garrett pleaded guilty to being a felon in possession of a

firearm, in violation of 18 U.S.C. § 922(g)(1), and was sentenced to a term of

imprisonment of 84 months.  Garrett now appeals the substantive reasonableness of

his sentence.  Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm the

sentence imposed by the district court.

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

I

On August 11, 2022, a detective with the Oklahoma City Police Department (OCPD) received a call from Erica Tiller.  Tiller reported that her boyfriend, Garrett, had kept her inside her apartment for several days and would not allow her to leave.  Tiller further reported that she convinced Garrett to let her leave the apartment in order to take her daughter to her first day of school, and that she decided to call for help after dropping her daughter off at school.  According to Tiller, Garrett had a firearm in the apartment and had made various threats to use it, including using it to kill Tiller if the police showed up at the apartment.

Tiller, as instructed by the detective, returned to the apartment and met OCPD officers there.  Tiller signed a search waiver for the apartment.  During the search of the apartment, officers located in the kitchen a Glenfield model 60 by Marlin .22 caliber rifle with no serial number.

An OCPD detective interviewed Garrett after the search.  Garrett denied Tiller's allegations and denied knowing about the rifle that was found in the apartment.

II

On September 13, 2022, a criminal complaint was filed in the Western District of Oklahoma charging Garrett with one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).  A federal grand jury subsequently indicted Garrett on the same charge.

Garrett entered into a plea agreement with the government. Under the terms of the agreement, Garrett agreed to plead guilty to the single count alleged in the indictment and the government agreed not to seek an indictment alleging the additional crime of assault resulting in serious bodily injury related to a post-arrest assault committed by Garrett while in federal confinement. The parties agreed that a sentence of 77 to 96 months was appropriate, but also recognized that their agreement was not binding on the district court. In addition, the parties agreed that Garrett should receive a two-level downward adjustment for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a), and that the government would move for an additional one-level downward adjustment pursuant to U.S.S.G. § 3E1.1(b) if it determined that Garrett qualified for that adjustment.

The probation office prepared a presentence investigation report (PSR). The PSR, in accordance with U.S.S.G. § 2K2.1, adopted a base offense level of 20. The PSR then applied the two reductions for acceptance of responsibility that were agreed to by the parties in the plea agreement. That resulted in a total offense level of 17. The PSR calculated a total criminal history score of 22 and a criminal history category of VI. The PSR also noted that Garrett had multiple criminal charges pending against him in Oklahoma state court. Based on the total offense level and criminal history category, the PSR calculated a guideline imprisonment range of 51 months to 63 months.

The district court sentenced Garrett on October 18, 2023. The district court declined to decide whether all of the statements that Tiller made to the OCPD

3

detective on August 11, 2022, were truthful.  The district court adopted the PSR's

total offense level, criminal history category, and advisory guideline range

calculations, and noted that it did not "intend to be influenced by" the parties'

misunderstanding as to the proper advisory guideline sentencing range.  R. vol. III at

23.  The district also court noted that Garrett's criminal history painted "a fairly grim

picture."  *Id.* at 14.  As for the offense of conviction, the district court noted that the

case was "not toward the egregious end of th[e] range" of felon-in-possession cases,

"[s]o that d[id] not cut against [Garrett] in any noteworthy way."  *Id.* at 32.  The

district court briefly discussed Garrett's history and characteristics, and noted that

Garrett had "a heartbreakingly difficult childhood" and "some serious health

challenges."  *Id.*  But, returning to Garrett's criminal history, the district court noted

that history "includ[ed] some fairly recent matters that cause[d] [it] to conclude that"

Garrett was "a dangerously unstable individual."  *Id.*  The district court discussed the

other statutory sentencing factors and noted in particular that incapacitation was "a

powerful factor that [wa]s an aggravating factor against . . . Garrett in this case."  *Id.*

at 33.  The district court explained that "[p]ublic safety in terms of the potential for

violent crime" and "the potential for other nonviolent but still serious offenses, like

drug dealing, [we]re all in the mix" and were "aggravated by some relatively recent[]

and various serious misconduct," all of which led it "to believe that this dangerously

unstable individual need[ed] to be incapacitated for a reasonable period of time."  *Id.*

at 33–34.  The district court concluded "that [a] reasonable period of time" was "a

term of incarceration of 84 months," which it acknowledged was "an upward

variance" from the advisory guideline imprisonment range. *Id.* at 34. Ultimately, the district court "conclude[d] that a sentence that [wa]s sufficient but not greater than necessary to achieve the statutory objectives of sentencing [wa]s a sentence of 84 months of incarceration to be followed by three years of supervised release." *Id.*

After final judgment was entered, Garrett filed a timely notice of appeal.

III

Garrett argues in his appeal that the sentence imposed by the district court was substantively unreasonable. "We review the substantive reasonableness of a sentence for abuse of discretion." *United States v. Kaspereit*, 994 F.3d 1202, 1207 (10th Cir. 2021). Under this standard of review, we give "substantial deference to the district court's determination" and will "overturn [the] sentence as substantively unreasonable only if it is arbitrary, capricious, whimsical, or manifestly unjust." *Id.* Further, where, as here, the district court imposes an above-Guidelines sentence, we "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *United States v. Peña*, 963 F.3d 1016, 1029 (10th Cir. 2020) (internal quotation marks omitted).

In challenging the substantive reasonableness of his sentence, Garrett begins by noting that the sentence imposed by the district court "amounted to a thirty percent increase from the middle of the actual guideline range." Aplt. Br. at 11. Garrett also argues that the sentence "reveals the court was influenced by the entirety of conduct in the PSR, both contested and uncontested." *Id.* at 12. Lastly, Garrett

5

argues that the district court "did not point to any meaningful way the guidelines failed to appropriately encompass [his] conduct or history." *Id.*

We acknowledge, as an initial matter, that the sentence imposed by the district court was 33 months longer than the bottom of the advisory guideline range and 21 months longer than the top of the advisory guideline range. That fact alone, however, does not render the sentence substantively unreasonable. Instead, as our precedent indicates, we must examine the rationale offered by the district court for the variance and determine whether it was sufficiently compelling to support the degree of the variance.

Although Garrett suggests that the district court must have relied on Tiller's allegations regarding what transpired on August 11, 2022, prior to the search of the apartment, the district court's own statements at sentencing clearly refute this notion. Specifically, the district court declined to make any factual determinations regarding what happened on August 11, 2022, and instead focused on the statutory sentencing factors outlined in 18 U.S.C. § 3553(a) in deciding what sentence to impose. Of those sentencing factors, the district court placed the greatest emphasis on the recency and seriousness of Garrett's criminal history and, in turn, the need for the sentence to protect the public due to the fact that, in the district court's view, Garrett was "dangerously unstable." R. vol. III at 32.

Finally, we reject Garrett's assertion that the specific concerns expressed by the district court were already taken into account by the sentencing guidelines. To be sure, the guidelines require a district court to consider a defendant's criminal history

6

and to calculate a criminal history category. But the guidelines do not necessarily take into account the trends of a defendant's criminal conduct, either in terms of the recency or seriousness of that criminal conduct. *See United States v. Garcia*, 946 F.3d 1191, 1214 (10th Cir. 2020) (stating that where Guidelines' criminal history computation does not "fully reflect the seriousness of an offender's criminal background," then "action to elevate sentences above the . . . Guidelines range may be appropriate"). After reviewing the PSR, we agree with the district court that Garrett had a spate of recent and quite serious criminal conduct that justified a sentence above the guidelines range.[1]

For all of these reasons, we reject Garrett's arguments and conclude that the sentence imposed by the district court was not substantively unreasonable.

III

AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge

---

[1] According to the PSR, Garrett had numerous pending state charges that involved criminal misconduct that occurred in 2022. Those charges included possession of a controlled substance with intent to distribute, leaving the scene of a collision causing property damage, unlawful possession of marijuana and driving with a canceled, suspended, or revoked license, violation of a protective order, malicious injury or destruction of property, and domestic assault and battery by strangulation.